**P.J. BERRY COMPANY, INC., a Colorado corporation, Plaintiff-Appellant,**

v.

**DENVER AMERICAN FAMILY LODGE WEST, INC., a Colorado corporation, Defendant-Appellee.**

**No. 81CA0324.**

Colorado Court of Appeals, Div. I.

April 7, 1983.

Bradley, Campbell & Carney, P.C., Earle D. Bellamy II, Golden, for plaintiff-appellant.

Hornbein, MacDonald, Fattor & Buckley, P.C., James C. Fattor, Denver, for defendant-appellee.

STERNBERG, Judge.

Plaintiff, P.J. Berry Company, the broker, brought suit to collect a real estate commission allegedly owed to it by defendant, Denver American Family Lodge West, the owner. The trial court concluded that under the terms of the listing contract the broker was not entitled to a commission and dismissed the complaint. We agree and therefore affirm the judgment.

On July 13, 1976, the owner entered into an exclusive listing agreement with the broker for the sale of a motel. The agreement was to expire on July 14, 1977, but contained a clause providing that the broker was to receive a commission of seven percent of the selling price

> "in case of any . . . sale or exchange of the said property within 180 days subsequent to the expiration of this agreement to any party *with whom the said broker negotiated and whose name was disclosed to the owner by the broker during the listing period.*" (emphasis added)

In June 1977, a potential purchaser, Eugene LaMeres, contacted an employee of the broker to inquire about the property and that employee gave him the address of the property and the price. The employee's recollection was vague, but he testified that thereafter he informed either his superior, P.J. Berry, or Robert Hahn, president of American Family, of the call. Because LaMeres, the potential purchaser, owned a motel across the street from the subject property, the broker's employee testified that he did not want to divulge operating statistics to him without discussing it with Hahn. Berry testified that he preferred Hahn to contact LaMeres because the two were competitors. Hahn testified he agreed to call only because it would be a local call for him and long distance for Berry.

In any event, Hahn testified that he called LaMeres in late June but that LaMeres merely inquired about the asking price, told Hahn the price was too high, and that he had no interest in purchasing the property at that time. Later, when Berry asked Hahn whether he had contacted LaMeres, Hahn told him he had but that LaMeres was just being a "nosey" neighbor. Berry did not contact LaMeres.

On or about July 1 LaMeres called Hahn again and asked whether he had sold the motel. Hahn said, "No," but that it was listed with Berry and was soon to be shown to a prospective purchaser. According to Hahn, LaMeres still expressed no interest in purchasing the property. Hahn did not inform Berry that LaMeres called again, and Berry made no inquiries.

When the listing contract expired, the parties had still not sold the property, but American Family declined to renew the contract. Hahn testified that because of tax problems he and his partner were not certain that they wanted to sell the property in the near future.

On or about July 20, 1977, LaMeres called American Family again to discuss the possibility of purchasing the property. Either Hahn or his partner told him that because a sale would cause a tax problem for them, they were not interested. LaMeres proposed financing terms differing from those in the listing contract in an effort to alleviate the tax consequences. After several days of negotiating, an agreement was reached. It was reduced to writing and signed on or about August 1, 1977, a date within the 180 day extension period in the listing contract. When Berry learned of the sale in February 1978, he made demand for his commission and this suit followed.

The trial court concluded that the broker must perform two tasks to be entitled to receive a commission for a sale occurring during the 180 day extension: the broker must have disclosed the name of the prospective purchaser during the listing period and must have negotiated with the purchaser. It construed "negotiate" to require affirmative action to attempt to sell the property. The court found that Berry had disclosed the name of the purchaser but had not negotiated, and thus it dismissed the complaint.

■ We agree with the trial court that the broker was entitled to recover only if the two requirements of the listing contract were satisfied, and that disclosing the name of a prospective purchaser and doing nothing further did not satisfy the requirement that the broker "negotiate" during the term of the contract.

■ In *Horton-Cavey Realty Co. v. Spencer,* 37 Colo.App. 96, 544 P.2d 998 (1975), we held that a clause identical to the one at issue here was clear and unambiguous, and the parties would be held to the plain and accepted meaning of the terms though the result may be harsh. The broker accepts that interpretation but contends that disclosure is the essential element of the clause. We disagree. The disputed fact in *Horton-Cavey* concerned disclosure, but there is no indication that one element should receive more weight than the other.

■ In the context of a listing contract, negotiation means deliberation, discussion, or conference upon the terms of a proposed agreement. *Dunklee v. Shepherd,* 145 Colo. 197, 358 P.2d 25 (1960). Informing someone that property is for sale and giving them the price does not satisfy the requirement of negotiation. *Dunklee v. Shepherd, supra.* Berry argues that bringing together a buyer and a seller satisfies the terms of the contract. The law in Colorado is otherwise. *See Minissale v. Elmer,* 153 Colo. 383, 386 P.2d 355 (1963); *Dunklee v. Shepherd, supra.*

■ We also disagree with the broker's claim to recover a commission on equitable grounds. If there is an express contract, unjust enrichment is not an issue and the broker's entitlement to a commission is determined by the terms of the contract. *Mitten v. Weston,* 44 Colo.App. 274, 615 P.2d 60 (1980). It is true that the doctrine of estoppel may prevent a party from asserting the contrary of what it leads anoth-

er to believe and rely on. *First National Bank v. Ulibarri,* 38 Colo.App. 428, 557 P.2d 1221 (1976). But here, American Family does not assert the contrary of what it led Berry to believe; *i.e.,* that LaMeres did not express an interest in purchasing the property during their initial contact. Thus, estoppel does not apply.

The other contention of error is without merit.

The judgment is affirmed.

· BERMAN and COYTE,* JJ., concur.

* Retired Court of Appeals Judge sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S.1973 (1981 Cum.Supp.)